HAMITER, Justice.
In this criminal proceeding the State of Louisiana is appealing from a judgment sustaining a motion to quash (also a demurrer to) an indictment which charged, in the short form provided for in LRS 15 :- 235, that the defendant, Leon A. Picou, Jr., “ * * * on or about the 7th day of August, in the year of Our Lord, One Thousand Nine Hundred and fifty-seven, did with force and arms commit a theft of a twenty percent interest in a right and cause of action at law owned by Warren Wall against Joseph H. Marix and Globe Indemnity Company of New York, of a value of $1,875.00, * * *.”
*426 A companion case (State v. Picou, 236 La. 450, 107 So.2d 701), in which the state likewise appealed from a similar ruling, involves an identical charge against this defendant except as to the owner and the value of the right and cause of action. Thus, the indictment therein charged that such defendant “ * * * on or about the 7th day of August, in the year of Our Lord, One Thousand Nine Hundred and fifty-seven, did with force and arms commit a theft of a twenty percent interest in a right and cause of action at law owned by Edward H. Hughes against Joseph H. Marix and Globe Indemnity Company of New York, of a value of $5,625.00, * *
Since the issues in the two cases are the same our pronouncements and conclusions herein will be applicable also to the companion matter.
To be considered first is a motion by the defendant to dismiss the state’s appeal on the grounds that (1) at no time did the judge grant an order of appeal, and (2) the state failed to reserve and perfect a formal bill of exceptions to the court’s action in sustaining the motion to quash and the demurrer.
The minutes of the proceedings had in open court indicate that the requisite appeal order was granted by the judge, for they recite (among other things) as follows:
“Order. Upon motion of the District Attorney Hon. R. H. Kilbourne it is ordered that an appeal be hereby granted to Louisiana State Supreme Court returnable on Monday June 23, 1958.” With reference to the second ground we are required, even in the absence of perfected bills of exceptions, to determine if there is error patent on the face of the record; and the making of this determination necessitates an entertainment of the appeal. Hence, defendant’s motion to dismiss has no merit.
Seeking affirmance of the judgment appealed from, defendant urges that the trial judge properly took into consideration facts disclosed by a bill of particulars furnished by the state and correctly held that the indictment (considered in the light of such bill of particulars) fails to set out the crime of theft as defined by LRS 14:67. The state, on the other hand, insists that the bill of particulars could not legally be considered in determining the validity of the indictment; and that accordingly, particularly since the latter instrument sufficiently charged in the authorized short form the crime of theft, the motion to quash and the demurrer should have been overruled.
The issue thus raised by the state was specifically passed upon in State v. Bessar, 213 La. 299, 34 So.2d 785, 789. Therein, we said: “The indictment returned by the jury in this case being in the *428 short form prescribed by the Code of Criminal Procedure, the defendant was entitled to a bill of particulars setting out more specifically and in detail the offense charged, i. e., the facts upon which the prosecution is based. Article 235, as amended, and this bill, when furnished, operated to limit the scope of proof on the trial by restricting the introduction of evidence to the proof of those facts set out in the bill of particulars. * * * Consequently, the court in considering the motion to quash the indictment must construe those facts as set out in the bill of particulars to be true and determine whether or not, if proved, they constitute the crime charged.”
This language was quoted with approval in State v. Masino, 214 La. 744, 38 So.2d 622. Too, in State v. Peterson, 232 La. 931, 95 So.2d 608, 613, we followed and applied the doctrine thus enunciated, holding therein that the bill of information involved, when considered along with the facts disclosed by a bill of particulars, did not state a crime under the laws of this state.
Incidentally, in the Peterson case no member of this court disapproved of the use of the bill of particulars in passing upon the motion to quash. Moreover, there, Chief Justice Fournet, citing approvingly State v. Bessar, supra (the opinion of which he authored), observed in a concurring opinion as follows: “The defendant having been furnished with a bill of particulars on an information charging him with theft of $7,000 * * * the State is bound by these particulars; consequently, the trial judge properly sustained the motion to quash because the facts recited in the bill of particulars, even if proved, fail to constitute the crime charged.”
It is true that State v. Dabbs, 228 La. 960, 84 So.2d 601, cited and relied on by the state herein, contains language that seems to be in conflict with the above quoted pronouncements from the Bessar decision. However, such language is apparently obiter dicta, for a close reading of the opinion in the Dabbs case will disclose that the court did consider the recitals of the bill of particulars involved in ruling on a motion to quash.
Consequently, our jurisprudence appears to be to the effect that in passing upon a motion to quash an indictment or an information drawn in the short form as authorized by LRS 15:235 the court can and must take into consideration the facts set forth in a bill of particulars furnished by the state in response to the defendant’s motion therefor.
In the instant cause the defendant, while agreeing that for the reasons above set forth the trial judge properly considered the facts contained in the bill of particulars, contends that this court cannot indulge in a like consideration inasmuch as the district attorney failed to attach such bill of *430 particulars (as well as the documents thereto annexed) to a reserved and perfected bill of exceptions. In this - connection he argues that as a result of such failure we do not have before us the facts necessary for a proper review of the judgment of the district court and, therefore, we must affirm its ruling.
The contention and argument are without substance. As pointed out above it is our duty in a criminal case, even in the absence of perfected bills of exceptions, to ascertain whether there is error patent on the face of the record. And, according to LRS 15:503, “An error is patent on the face of the record when it is discoverable by the mere inspection of the pleadings and proceedings and without any inspection of the evidence, though such evidence be in the record.” Clearly, a bill of particulars filed in connection with a short form indictment or information, to which particulars a defendant is entitled on the tendering of a proper and timely motion therefor, constitutes an essential part of the “pleadings and proceedings” of the cause. (Italics ours.)
We come now to the question of whether the indictment herein, along with the facts recited in the bill of particulars and annexed documents, sets forth the crime of theft as defined in LRS 14:67.
The definition contained in the mentioned statute is: “Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.”
Thus, for the conduct of this defendant to constitute the crime of theft there must have concurred four elements, namely, (1) a taking or misappropriation of a thing belonging to another, (2) the mentioned thing had some value, (3) absence of the consent of the other or the existence of fraudulent conduct, practices or representations on the part of the accused, and (4) an intent to deprive the other permanently.
The following questions, together with the answers thereto contained in the state’s bill of particulars, disclose the manner in which the alleged theft occurred and are otherwise pertinent to a determination of this cause:
“Q. Was the alleged theft a misappropriation or a taking? State which. A. The theft herein charged was a taking.
******
“Q. Did the accused commit the alleged theft by fraudulent conduct, practices or representations ? State which. A. The accused committed the theft by means of fraudulent con *432 duct, practices and representations performed in the following manner. On the date of the theft, the accused went to the residence of a daughter of Warren Wall in the Town of Jackson, Louisiana, where the accused had learned that Warren Wall was staying temporarily. The accused was unknown to Warren Wall. At the time, Warren Wall was in a state of shock resulting from an accident in the Town of Jackson which had occurred three or four hours earlier and in which Warren Wall’s minor daughter and two of his grandchildren were critically injured. The accused called upon Warren Wall in company of Hardy Travis, Town Marshal of the Town of Jackson and who was related to and well known to Warren Wall. Upon arriving at the residence where Warren Wall was, the accused stayed in his automobile in front of the residence and Hardy Travis went into the residence and told Warren Wall that Mr. Picou wanted to see him. When Warren Wall came out to the automobile, the accused presented him with a written document which was folded in such a manner that only the bottom portion thereof was visible to Warren Wall. The accused thereupon represented to Warren Wall that he, the accused, wanted to investigate the accident and that it was necessary for Warren Wall to sign the paper held by the accused in order for the investigation to be made. Whereupon the said Warren Wall signed the document presented to him, in the manner aforesaid, without knowing that the said document was actually a contract wherein the said Warren Wall transferred and delivered to the accused a twenty per cent interest in the cause of action owned by Warren Wall as a result of the accidental injuries to the minor daughter of Warren Wall, to-wit: Betty Wall.
?}« %
“Q. What interest or claim of ownership did Warren Wall have in said cause of action on the 7th day of August, 1957? A. The claim of one parent for injuries to the minor child of said parent caused by the fault of a third person.
* * * * * *
“Q. What was the total value of said cause of action as of August 7, 1957? A. The total value of the cause of action as of August 7, 1957 is unknown.
* * * * * *
“Q. How did the' accused intend to permanently deprive the owner of said alleged cause of action? A. The accused intended to permanently deprive Warren Wall of a twenty percent interest in the cause of action in the following manner: On or about Au *434 gust 21, 1957, the accused caused the contract on which he had fraudulently obtained the signature of Warren Wall, transferring to the accused a twenty percent interest in the cause of action, to be filed in the office of the Clerk of Court and Recorder of Mortgages for the Parish of East Feliciana and to be recorded in Mortgage Book No. 35, page 518 of said office. The accused further caused notice of the filing of said contract, together with copies of same, to be served on the defendants in said cause of action, to-wit: Globe Indemnity Company of New York and Joseph H. Marix as well as on Warren Wall.
“Q. Who had possession of the alleged subject of the theft on the date alleged in the indictment ? A. On the date alleged in the indictment, to-wit: August 7, 1957, Leon A. Picou, Jr. had possession of a twenty percent interest in the subject of the theft, fraudulently acquired in the manner hereinabove set forth, and Warren Wall had possession of the other eighty percent interest.
* * * * * *
“Q. Did Warren Wall voluntarily sign said contract? A. Warren Wall voluntarily signed the contract, relying on the fraudulent representations by the accused that the contract was nothing more than authority for the ac-
cused to investigate the accident in which the minor daughter of Warren Wall was injured.
“Q. If the contract was written please attach a copy thereof to the bill of particulars. A. A copy of the contract and assignment to the accused is annexed hereto.
# sjc % :fc
“Q. Was the contract cancelled by accused? A. After Warren Wall had employed the law firm of Durrett, Hardin & Hunter of Baton Rouge to take such legal measures as might become necessary to annul the contract which had been fraudulently obtained by the accused, the accused, on or about the 14th day of October, 1957, authorized the Clerk of Court of the Parish of East Feliciana to cancel the contract from her records as will appear by reference to a copy of the letter addressed by the accused to said Clerk of Court which is annexed hereto.”
The mentioned contract, dated August 7, 1957 and annexed to the state’s bill of particulars, provided in part: “Personally Came And Appeared: Warren Wall * * * hereinafter referred to as ‘Client’, who declared that he (she) does hereby employ Leon A. Picou, Jr., St. Francisville, Louisiana, hereinafter referred to as ‘Attorney’, as his (her) attorney to investigate, prosecute and collect, whether by suit, com *436 promise or otherwise his (her) claim arising from gravel truck accident of August 7, 1957 injuring my daughter Betty Wall * * * said claim being against - - and any and all other persons who might be responsible therefor.
“The said attorney accepts said employment and in consideration of his services rendered and to be rendered, client does hereby agree to pay to attorney Twenty (20%) per cent of whatever money, or real, personal or mixed property of any description whatever is collected if not necessary to file suit, and one third (331/3) per cent if necessary to file suit and client hereby assigns, transfers and delivers to attorney an interest in this cause as stipulated hereinabove whether by judgment or compromise. Client authorizes attorney to file any and all papers necessary in the prosecution of this claim.
“Neither client nor attorney shall have the right, without the written consent of the other, to settle, compromise, release, discontinue or otherwise dispose of such suit or claim.
“Attorney shall have the right at any time to withdraw from this contract in the event he concludes, from any information that he subsequently obtains, that client does not have a reasonably good possibility of recovering as a result of the aforementioned cause of action.”
Under the circumstances revealed by the bill of particulars and annexed documents we are unable to conclude that this-defendant, by his alleged fraudulent conduct, took something of value — an essential element, as before shown, in the commission of the crime of theft. The consummated contract was nothing more than, an employment agreement. — -a personal service undertaking — under which the accused would render legal services in the prosecution of Wall’s cause of action. Thereunder, if the services produced favorable results he would be paid a stipulated' percentage of the sum recovered (payment to him was entirely conditional, it depending on the happening of an uncertain event); otherwise he would receive nothing.
True, the contract recited that Wall transferred and delivered to the attorney an interest in the cause of action (20% or 33j/3% of whatever sum is collected,, the interest conveyed being dependent on whether collection .is by compromise or suit). Evidently this recitation was inserted, pursuant to the provisions of LRS 37:218, only for the purpose of protecting the attorney’s contingent fee as against third persons. In any event, however, the fact remains that the transferred interest in Wall’s cause of action had no real value when the contract was executed — it then had, as before shown, only a potential value. Supporting this observation is the *438 district attorney’s statement, contained in the bill of particulars, that: “The total value of the cause of action as of August, 7, 1957 is unknown.” It may be further observed, in this connection, that unquestionably the attorney did not receive something that was salable and transferrable by him on the date of the so-called delivery.
Nor do the pleadings disclose an intention on the part of the accused at the time of the alleged taking to permanently de-’ prive Wall of an interest in the cause of action. According to the bill of particulars this essential intention respecting permanent deprivation did not come into existence until August 21, 1957 (fourteen days after the charged taking occurred through the execution of the August 7, 1957 contract) when the accused recorded the instrument and caused service of copies thereof to be made on the persons responsible under the cause of action and on Wall.
Besides, such recordation could not and did not change the status of the accused under the contract or give to him any rights against Wall different from those he already had, for the agreement provided that neither of them could settle, ■compromise or otherwise dispose of the claim without the written consent of the other. Apparently the only purpose served by the recordation was to obtain the protection afforded by LRS 37:218,which is that, on a compliance with the provisions thereof, any settlement made by one of the parties to the contract without the written consent of the other would be null and the claim could thereafter be prosecuted as if no such settlement had been made. Incidentally, the recording of the instrument by the attorney was just as effective against him (and in favor of Wall) as against the client. Moreover, this accused, as shown by the bill of particulars, relinquished his rights under the recorded contract before any settlement of the cause of action occurred.
Since the indictment, when considered with the bill of particulars, discloses a lack of two essential elements of the crime of theft with which this accused was charged we hold that the motion to quash and the demurrer were correctly sustained by the trial judge.
For the reasons assigned the judgment appealed from is affirmed.
McCALEB, J., concurs with written reasons.
FOURNET, C. J., concurs in the decree being in accord with the views expressed in Justice McCALEB’S opinion.
SIMON, J., dissents with reasons.