141 So.2d 375

**STATE of Louisiana**

v.

**George RAMSEY.**

No. 45915.

April 30, 1962.

Rehearing Denied June 4, 1962.

Seale, Hayes, Smith, Keogh & Franklin, Baton Rouge, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Alex W. Wall, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant is appealing from his conviction on a Bill of Information charging him with forgery,[1] and his sentence thereunder to serve six years at hard labor in the state penitentiary. Of the several Bills of Exceptions reserved during the course of the trial, only two were perfected—Nos. 3 and 4.

We think these bills have merit. "Forgery is the false making or altering, *with intent to defraud,* of any signature to,

---

1. The Bill of Information charges that the accused did *"forge a certain instrument purporting to be a check,* as follows: Dated May 11, 1961, drawn on Louisiana National Bank, Baton Rouge, Louisiana, in the amount of Forty ($40.00) Dollars, payable to the order of Pak-A-Sak, and signed 'Neal J. Ramsey.'" (The emphasis has been supplied.)

or any part of, any writing purporting to have legal efficacy. * * *" R.S. 14:72. Consequently, the trial judge erred when, by his ruling, he prevented defense counsel from cross-examining the state's witness David I. Stallings, from whom counsel was seeking to elicit evidence that would tend to show defendant lacked any intent to defraud by the issuance of the check forming the basis of this charge, for intent to defraud is not only an essential ingredient of the crime, but an element so sacramental it must be proved by the state in accordance with law. See, State v. Boasso, 38 La. Ann. 202; State v. Laborde, 120 La. 136, 45 So. 38; State v. McCranie, 192 La. 163, 187 So. 278; State v. Digilormo, 200 La. 895, 9 So.2d 221; 23 Am.Jur. 678, Section 6; and 37 C.J.S. Forgery §§ 3 and 4, pp. 34–35. It therefore follows that this evidence was not only vital to the defendant, but he was thereby deprived of the right to make use of all of the evidence that was available for his defense. See, State v. Kelly, 241 La. 224, 128 So.2d 18, and 31 C.J.S. Evidence § 160, p. 869. (The emphasis has been supplied.)

Of more importance, we think, however, is the fact that had counsel not been thus curtailed, it would have become apparent to the judge that defendant was being tried for an offense of which he was seemingly not guilty. Even from the record as presented to us, which is rather skimpy, as well as argument of counsel and facts conceded by the prosecuting attorney, it is extremely doubtful defendant should have been charged with the crime of forgery. In fact, it would appear that although defendant did issue the check forming the basis of this prosecution, he did not "forge" the name of another to it, using, instead, what may be termed at best an "alias," as he was not only employed under the name of Neal Ramsey and known as such, but gave to the payee of the check the address where he actually resided. See, State v. Melson, 161 La. 423, 108 So. 794; State v. Wilson, 168 La. 932, 123 So. 624; and the annotation at 49 A.L.R.2d 866, Section 3(d). It is thus obvious that had defense counsel not been curtailed in his cross-examination of Stallings, the trial judge would have readily recognized defendant, if guilty of anything, was guilty of issuing a "worthless check" in violation of R.S. 14:71,[2] provided, of course, the state could have established the

---

2. The pertinent portion of this statute reads as follows: "Issuing worthless checks is the issuing in exchange for anything of value, with intent to defraud, of any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has not sufficient credit with the bank or other depository for the payment of such check, draft, or order in full upon its presentation. The offender's failure to pay such a check, draft, or order, within ten days after the receipt by him of written notice of its nonpayment upon presentation, shall be presumptive evidence of his intent to defraud."

defendant failed to cover the amount of the check "within ten days after the receipt by him of written notice of its nonpayment upon presentation."

■ A mere reading of R.S. 14:72, and the comments of the drafters thereunder, will readily disclose the state's contention, urged both orally and in brief, to the effect that the mere issuance or utterance of a check by one who knows he does not have the funds in the bank on which it is drawn to cover it, constitutes "forgery," lacks substance under the definition of this crime as set out in the statute.

In fact, the legislature has seen fit to make the issuance of such a check a separate and distinct offense in R.S. 14:71, which it labels "Issuing worthless checks." The penalty for "forgery," regardless of the amount involved, is a fine of not more than $5,000 or imprisonment, with or without hard labor, for not more than *ten* years, or both. On the other hand, the penalty for the issuance of "worthless checks"—the amount involved here being less than $100 and more than $20—is a fine of not more than $300, or imprisonment with or without hard labor, for not more than *two* years, or both. In the instant case, the defendant was sentenced to serve *six* years in the penitentiary at hard labor for the issuance of a "worthless check" amounting to $40.

■ In the light of the foregoing, and in the interest of justice, we have sought an avenue whereby we might be able to give this defendant some relief, but find ourselves faced with the provisions of the Revised Statutes of 1950 to the effect that "No new trial can be granted on appeal unless a motion for same has been made and refused in the lower court * * *" (R.S. 15:559), for although defense counsel perfected the bills above discussed and timely filed the transcript of the case in this court on appeal, he failed to move for a new trial in the lower court and secure a ruling on such motion.

Despite the fact a perusal of the jurisprudence under this article (R.S. 15:559) discloses this court, "in an abundance of precaution," has considered perfected bills even when no motion for a new trial was sought and passed on in the lower court (State v. Cooley, 185 La. 1032, 171 So. 435), and has chosen to relax these provisions in a *capital* case (State v. Richard, 203 La. 722, 14 So.2d 615), it is our opinion that we cannot, without exercising legislative functions, disregard the plain provisions of this mandate with respect to the procedure to be followed in a criminal trial, as laid down by the legislature.

Moreover, were we to grant a new trial in this case under the application of the "interest of justice" theory, we would not only leave the courts without provisions to guide them in the orderly trial of criminal cases, and lead to much confusion in the legal fraternity, but we would also feel

compelled to extend this theory to other aspects of a criminal trial, as, for example, where Bills of Exceptions reserved during the trial have not been timely perfected, although we have consistently refused to consider such bills on appeal.

Inasmuch, therefore, as a new trial was not sought in the lower court, and an examination of the record fails to reveal any errors patent on its face, it is our opinion that the only avenue open to the defendant for relief is one that addresses itself to the power and discretion vested in the Governor and the Board of Pardons under the law.[3]

Accordingly, the conviction and sentence are affirmed.

---

3. See, State v. Guagliardo, 146 La. 949, 84 So. 216.